IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI-DADE DIVISION

CASE NO.: 18-CV-23097- CMA

IMPLANT SEMINARS, INC.,                    )
a Florida corporation,                     )
                                           )
        Plaintiff,                         )
                                           )
v.                                         )
                                           )
                                           )
SAMUEL SOON HO LEE, an individual;         )
INTERNATIONAL ACADEMY OF                   )
DENTAL IMPLANTOLOGY, LLC,                  )
a dissolved California Limited Liability   )
company; JOHN DOE CORPORATION              )
NO. 1; and JOHN DOES 1 through 3,          )
                                           )
        Defendants.                        )

_____/

**PLAINTIFF'S MOTION FOR PRELIMINARY AND
<u>PERMANENT INJUNCTIVE RELIEF</u>**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................. ii

STATEMENT OF FACTS .................................................................................. 2

ARGUMENT ....................................................................................................... 4

    I.    Plaintiff is Likely to Prevail ................................................................. 5

    II.   Plaintiff's Remedies at Law Are Inadequate to Compensate the Harm and Damage Suffered ................................................................ 13

    III.  The Balance of Hardships Weighs Heavily in Plaintiff's Favor ............. 15

    IV.  An Injunction Would Further the Public Interest .................................... 15

CONCLUSION .................................................................................................... 17

CERTIFICATE OF SERVICE ............................................................................ 19

## TABLE OF AUTHORITIES

*A.J. Canfield Co. v. Vess Beverages, Inc.,*
796 F. 2d 903 (7th Cir. 1988) ........................................................................16

*Adidas AG v. 2013jeremyscottadidas.com,*
2014 WL 799132 at *8 (S.D. Fla. Feb. 28, 2014) ...........................................14

*Angel Flight of Georgia, Inc. v. Angel Flight Am., Inc.,*
522 F. 3d 1200 (11th Cir.2008) ......................................................................15

*Anheuser-Busch, Inc. v. Stroh Brewery Co.,*
750 F. 2d 631 (8th Cir. 1984) .........................................................................15

*Babbit Elecs., Inc. v. Dynascan Corp.*
38 F. 3d 1161 (11th Cir. 1994) .........................................................................5

*BellSouth Adver. & Publ'g Corp. v. Real Color Pages, Inc.,*
792 F. Supp. 775 (M.D. Fla. 1991)...................................................................16

*Blue Bell Bio-Medical v. Cin-Bad, Inc.,*
864 F. 2d 1253 (5th Cir. 1989) ........................................................................16

*Canal Auth. of the State of Fla. V. Callaway,*
489 F. 2d 567 (5th Cir. 1974) ...........................................................................5

*Chanel, Inc. v. chanel255.org,*
No.: 12-21762-CIV 2012 WL 1941598, at *6 (S.D. Fla. May 29, 2012) ....................7, 17

*Chanel, Inc. v. Suttner,*
109 U.S.P.Q. 493 (S.D.N.Y. 1956)......................................................................7

*Cottonwood Financial Ltd. v. Cash Store Financial Serv. Inc.,*
778 F. Supp. 2d at 759 (N.D. Tex. 2011) ..........................................................13

*Custom Mfg. & Eng'g, Inc.v. Midways Servs., Inc.,*
508 F. 3d 641 (11th Cir. 2007) ........................................................................11

*E. Remy Martin & Co., S.A. v. Shaw-Ross Int'l Imports, Inc.,*
756 F. 2d 1525 (11th Cir. 1985) ......................................................................13

*eBay, Inc. v. MerExchange, LLC,*
547 U.S. 388, 126 S. Ct. 1837, 164 L. Ed. 2d 641 (2006)...................................5

*Edge Sys., LLC v. Aguila,*
186 F. Supp. 3d 1330 (S.D. Fla. 2016) ..................................................................14,15

*Enter. Int'l, Inc. v. Corporation Estatal Petrolera Ecuatoriana,*
762 F. 2d 464 (5th Cir. 1985) ...................................................................................13

*Frehling Enters., Inc. v. Int'l Select Group, Inc.*
192 F. 3d 1330 (11th Cir. 1999) ..............................................................................5,6

*Fun-Damental Too, Ltd. v. Gemmy Indus. Corp.,*
111 F. 3d 993 (2d Cir. 1997) ....................................................................................12

*Grizzle v. Kemp,*
634 F. 3d 1314 (11th Cir. 2011) ................................................................................4

*Hornady Mfg. Co. v. Doubletap, Inc.*
746 F. 3d 995 (10th Cir. 2014) ..................................................................................8

*It's a 10, Inc. v. Beauty Elite Group, Inc.,*
932 F. Supp. 2d 1325 (S.D. Fla. 2013) ....................................................................12

*Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.,*
299 F. 3d 1242 (11th Cir. 2002) ................................................................................4

*Laboratorios Roldan c. por A. v. Tex Int'l, Inc.,*
902 F. Supp. 1555 (S.D. Fla. 1995) ..........................................................................15

*Levi Strauss & Co. v. Sunrise Int'l Trading Inc.,*
51 F. 3d 982 (11th Cir. 1995) ...................................................................................14

*Lincoln Restaurant Corp. v. Wolfies Restaurant, Inc.,*
291 F. 2d 302 (2d Cir. 1961) ....................................................................................16

*Lois Sportswear, U.S.A, Inc. v. Levi Strauss & Co.,*
799 F. 2d 867 (2d Cir. 1986) ....................................................................................11

*Lone Star Steakhouse & Saloon, Inc. v. Longhorn Steaks, Inc.,*
122 F. 3d 1379 (11th Cir. 1997) ................................................................................6

*Marks Organization, Inc. v. Joles,*
784 F. Supp. 2d 322 (S.D.N.Y. 2011) .......................................................................12

*Michael Caruso & Co., Inc. v. Estefan Enters., Inc.*
994 F. Supp. 1454 (S.D. Fla. 1998) ...........................................................................6

*Modern Optics, Inc. v. Univis Lens Co.*,
43 C.C.P.A. 970, 234 F. 2d 504, 506 (C.C.P.A. 1956)......................................................7

*N.A. Med. Corp. v. Axiom*,
552 F. 3d 1211 (11th Cir. 2008) ................................................................11, 12

*N. Am. Med. Corp. v. Axiom Worldwide, Inc.*
552 F. 3d 1211 (11th Cir. 2008) ..............................................................................11

*Nailtiques Cosmetic Corp. v. Salon Scis., Corp.*,
1997 W L 244746 at *5 (S.D. Fla. 1997) ..................................................................15

*Nane Jan, LLC v. Seasalt and Pepper, LLC*,
No.: 2:2014cv00208 – Document 67 (M.D. Fla. 2014)..............................11, 12

*National Data Corp.*,
753 F. 2d 1056 (Fed. Cir. 1985) ................................................................................8

*Odebrecht Constr., Inc. v. Sec'y, Florida Dep't of Transp.*,
715 F. 3d 1268 (11th Cir. 2013) ................................................................................4

*Polo Fashions, Inc. v. Rabanne*,
661 F. Supp. 89 (S.D. Fla. 1986) ............................................................................16

*Processed Plastic Co. v. Warner Communications*,
675 F. 2d 852 (7th Cir. 1982) ................................................................................12

*Ryder Sys. V Storage Moving Servs.*,
2013 U.S. Dist. LEXIS 104490 *21 (S.D. Fla. July 25, 2013)........................16

*Saxlehner v. Eisner & Mendelson Co.*,
179 U.S. 19 (1900)....................................................................................................8

*Sovereign Military Hospitaller Order of Saint John of Jerusalem of Rhodes & of Malta v. Fla. Priory of the Knights Hospitallers of the Sovereign Order of Saint John of Jerusalem , Knights of Malta, the Ecumenical Order*,
809 F. 3d 1171 (11th Cir. 2015) ..........................................................................9, 10

*Spice Islands, Inc. v. Frank Tea & Spice Co.*,
505 F. 2d 1293 (C.C.P.A. 1974) ..............................................................................6

*Stork Restaurant, Inc. v. Sahati*,
166 F. 2D 348 (9th Cir. 1948) ................................................................................16

*Tally-Ho, Inc. v. Coast Community College Dist.*,
889 F. 2d 1018 (11th Cir. 1989) ............................................................................17

*Teledyne Indus., Inc. v. Windmere Prods., Inc.,*
433 F. Supp. 710 (S.D. Fla. 1977) .................................................................16

*Texas City Triathlon, LLC v. NYC Triathlon Club, Inc.,*
704 F. Supp. 2d 305 (S.D.N.Y. 2010) ......................................................13, 16

*Tiramisu Int'l LLC v. Clever Imports LLC,*
741 F. Supp. 2d 1279 (S.D. Fla. 2010) .........................................................15

*Under Armour,*
2014 WL 1652044 at *6 .................................................................................14

*Virgin Enters. Ltd. v. Nawab,*
335 F. 3d 141 (2d Cir. 2003) .........................................................................11

*Welding Servs., Inc. v. Forman,*
509 F. 3d 1351 (11th Cir. 2007) .......................................................................5

*Yurman Design Inc. V. Diamonds & Time,*
169 F. Supp. 2d 181 (S.D.N.Y. 2001) ...........................................................12

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE SOUTHERN DISTRICT OF FLORIDA**

**MIAMI-DADE DIVISION**

**CASE NO. 1:18-cv-23097-CMA**

| | |
|---|---|
| IMPLANT SEMINARS, INC., a Florida Corporation, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| SAMUEL SOON HO LEE, an individual; INTERNATIONAL ACADEMY OF DENTAL IMPLANTOLOGY, LLC, a dissolved California Limited Liability company; JOHN DOE CORPORATION NO. 1; and JOHN DOE 1 through 3, | ) ) ) ) ) ) ) |
| Defendants. | ) ) ) |

**PLAINTIFF'S MOTION FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF**

IMPLANT SEMINARS, INC., ("Plaintiff"), hereby moves for a preliminary and permanent injunction enjoining Defendants SAMUEL SOON HO LEE, INTERNATIONAL ACADEMY OF DENTAL IMPLANTOLOGY, JOHN DOE CORPORATION NO. 1 and JOHN DOES 1 THROUGH 3 (collectively, "Defendants")[1], under Rule 65(a) of the Federal Rules of Civil Procedure, from infringing Plaintiff's mark, and specially, from using any or all of the marks that constitute the IDIA Family of Marks (as defined herein) as a trademark or servicemark, or any confusingly similar designation, in connection with providing dental implant

---

[1] Plaintiff filed its Verified Complaint and Demand for Jury Trial [D.E. 1] on July 31, 2018. At the time, Plaintiff indicated that it was still investigating the identities of the John Doe defendants who assisted Defendants Samuel Soon Ho Lee and International Academy of Dental Implantology. [D.E. 1] at ¶14. Plaintiff has continued that investigation but at the present time is no closer to identifying the John Doe defendants.

1

services and live classes and seminars where medical professionals are educated in how to perform dental implant procedures and other procedures that can be performed by dentists.

## STATEMENT OF FACTS

Implant Seminars was founded by Dr. Arun K Garg in 1995 to educate and inform dentists and periodontists, and their staffs.  [D.E. 1] at ¶15. Since 1989, Dr. Garg has been teaching extensive hands-on surgical training workshops to dentists and periodontists. Plaintiff is the owner of all rights and interests in the service marks AMERICAN DENTAL IMPLANT ASSOCIATION[2] ("the ADIA Mark") INTERNATIONAL DENTAL IMPLANT ASSOCIATION[3] (the "IDIA Mark"), INTERNATIONAL DENTAL IMPLANT ASSOCIATION PURSUIT OF EXCELLENCE[4] (the "IDIA POE Mark"), and two versions of the INTERNATIONAL DENTAL IMPLANT ASSOCIATION PURSUIT OF EXCELLENCE & Design Mark (the "Red Shield Logo Mark"[5] and the "Blue Shield Logo Mark"[6]), as well as the AMERICAN DENTAL IMPLANT ASSOCIATION word mark[7] ("ADIA Mark") and the AMERICAN DENTAL IMPLANT ASSOCIATION logo mark[8] ("ADIA Logo), and the acronym marks ADIA[9] and IDIA[10] (collectively, the "IDIA Family of Marks") which are used for and in connection with  dental implant services, dental and periodontal educational services, and related services and goods (the "IDIA Services").  *Id.* at ¶¶ 18-30. All of the marks are currently in use by Plaintiff in advertising and promotional materials, historical brochures and articles on Plaintiff's websites, certificates in the offices and on the websites of dentists and their staff who have been trained by Plaintiff, and in Plaintiff's social media outlets, printed materials, uniforms, and in other media and modalities. *Id.* at ¶31.  Plaintiff holds a federal registration of

---

[2] This mark was first used in interstate commerce no later than September of 2008.  [D.E. 1] at ¶20.
[3] This mark was first used in interstate commerce no later than Spring of 2013.  [D.E. 1] at ¶21.
[4] This mark was first used in interstate commerce no later than Spring of 2013.  [D.E. 1] at ¶22.
[5] This mark was first used in interstate commerce no later than Summer of 2016.
[6] This mark was first used in interstate commerce no later than Spring of 2009.
[7] This mark was first used in interstate commerce no later than September of 2008.  [D.E. 1] at ¶20.
[8] This mark was first used in interstate commerce no later than September of 2008.  [D.E. 1] at ¶20.
[9] This mark was first used in interstate commerce no later than October of 2008.  [D.E. 1] at ¶25.
[10] This mark was first used in interstate commerce no later than Spring of 2013.  [D.E. 1] at ¶26.

the mark INTERNATIONAL DENTAL IMPLANT ASSOCIATION PURSUIT OF EXCELLENCE & Design at Registration No. 5,043,762 (the "762 Registration").

This is an action for injunctive relief and damages for, among other things, trademark infringement under federal and Florida state law.  [D.E. 1] at ¶1. Plaintiff seeks relief arising from infringing uses by Dr. Samuel Soon Ho Lee, the International Academy of Dental Implantology LLC, and one or more as yet undetermined entities which may include the San Diego University of Dental Medicine, Inc., of marks that are confusingly similar to, and which infringe on, Plaintiff's IDIA Family of Marks and the individual marks included therein.  *Id.* at ¶2.

At some point well after Plaintiff had adopted and used in commerce the marks AMERICAN DENTAL IMPLANT ASSOCIATION, ADIA and the ADIA Logo, Defendants adopted the mark International Academy of Dental Implantology and the acronym IADI (the "Infringing Marks").  *Id.* at ¶33.  On or about October of 2011, Defendants appeared to have created the infringing International Academy of Dental Implantology logo (the "Infringing Logo"). *Id.* at ¶34.  On information and belief, Defendants uploaded the Logo to a "business" page on Facebook[11], but did not add any other content to the Facebook page at that point, and appear to have made no other use of the mark at that point in connection to advertising, promoting or performing its periodontal education services or dental education services, or either periodontal or dental services.  *Id.*  However, circa early 2015, Defendants commenced use of the Infringing Logo on marketing materials that they distributed and/or caused to be distributed in connection with Defendants' services, as well as on certificates and goods provided to those who took Defendants' classes.  *Id.* at ¶40.  Defendants appear to use the International Academy of Dental Implantology, LLC to host the Infringing Services (although the California Limited Liability Company was dissolved in 2016).

Defendants are not, and have never been, an authorized promoter, licensee, or practitioner of services under any of Plaintiffs' trademarks, and Defendants' educational services and dental services risk causing health risks to patients, thus causing irreparable harm to the public, as well as to the unsuspecting dental practitioners and their staff who, believing they are obtaining

---

[11] It is impossible to determine before discovery whether the page that included the Infringing Logo was accessible by or available to the general public, or anyone other than Defendants, at the time said Infringing Logo was uploaded, or at any time thereafter, although it appears to be accessible to the general public at the time of this filing.

Plaintiff's training, are actually in classes taught by Defendants. *See, e.g., Id.* at ¶50 (failing to correct confusion).

Defendants' infringement spans across various contexts in connection with dental implant and education services which are identical in concept, purpose and audience customers, if not in quality to certain of Plaintiff's dental implant and educational services, and Defendants' infringements have expanded from use on a Facebook page to broader use across the dental implant industry. Granting the permanent injunctive relief requested herein will serve the public interest because it is the only way to bar Defendants use of Plaintiff's intellectual property and infringement on Plaintiff's rights, as well as Defendants causing actual confusion in the medical/dental services and education industries. Dentists and related businesses who recognize and know Plaintiff's IDIA Family of Marks and who rely on their recognition and knowledge of same marks to make decisions about their dental services and education, together with those who they refer, are at risk of being deceived into purchasing and/or obtaining services provided by Defendants under the mistaken belief that Defendants are operating or about to operate a genuine IMPLANT SEMINARS educational program, by mistakenly believing that the Defendants' services are performed by, authorized by, licensed by and/or operated by or pursuant to a license from Plaintiff.

By granting the injunctive relief requested, will serve the public interest by preventing consumer confusion and risking serious damage to Plaintiff's reputation, brand and rights.

<u>**ARGUMENT**</u>

Pursuant to the Lanham Act, a district court is authorized to issue an injunction "according to the principles of equity and upon such terms as the court may deem reasonable," to prevent violations of trademark law (15 U.S.C. § 1116(a)). Injunctive relief in this Circuit is granted upon a showing of: (1) a substantial likelihood of success on the merits of the underlying case, (2) the movant will suffer irreparable harm in the absence of an injunction, (3) the harm suffered by the movant in the absence of an injunction would exceed the harm suffered by the opposing party if the injunction issued, and (4) an injunction would serve the public interest. *Odebrecht Constr., Inc. v. Sec'y, Florida Dep't of Transp.*, 715 F.3d 1268, 1273 (11th Cir. 2013) (citing *Grizzle v. Kemp*, 634 F.3d 1314, 1320 (11th Cir. 2011)); *see also Johnson & Johnson*

*Vision Care, Inc. v. 1-800 Contacts, Inc.,* 299 F.3d 1242, 1246–47 (11th Cir. 2002), *eBay, Inc. v. MercExchange, L.L.C.,* 547 U.S. 388, 391, 126 S.Ct. 1837, 164 L.Ed.2d 641 (2006).

The goal of a preliminary injunction is to prevent irreparable harm and to "preserve the district court's power to render a meaningful decision after a trial on the merits." *Canal Auth. of the State of Fla. v. Callaway,* 489 F.2d 567, 572 (5th Cir.1974). "[T]he most compelling reason in favor of [granting a preliminary injunction] is the need to prevent the judicial process from being rendered futile by defendant's action or refusal to act." *Id.* at 573. To prevail on a trademark infringement claim, a plaintiff must demonstrate (1) that its mark has priority and (2) that Defendants' mark is likely to cause consumer confusion. *See Frehling Enters., Inc. v. Int'l Select Group, Inc.,* 192 F.3d 1330, 1335 (11th Cir.1999); *see also* 15 U.S.C. § 1114(1). To prevail on its unfair competition claims, Plaintiff must similarly demonstrate a likelihood of confusion. *See Babbit Elecs., Inc. v. Dynascan Corp.,* 38 F.3d 1161, 1181 (11th Cir.1994); *see also* 15 U.S.C. § 1125(a).

## I. <u>Plaintiff Is Likely To Prevail.</u>

Plaintiff is likely to prevail in this matter by virtue of longstanding senior ownership of and rights to the IDIA Family of Marks and the marks included therein, and as Plaintiff is suffering irreparable harm by Defendants' infringement of Plaintiffs' trademark rights.

### A) Defendants are infringing Plaintiff's Rights in and to its Family of Marks

Since its founding by Dr. Garg in 1995, Implant Seminars has been educating dentists and periodontists, and their staffs to provide services to members of the public as well as providing services to its own clients. As detailed above and in the Verified Complaint, Plaintiff is the owner of all rights and interests in the IDIA Family of Marks as well as the individual ADIA Mark, IDIA Mark, ADIA Logo, the IDIA POE Mark, and the "Red Shield Logo Mark" and the "Blue Shield Logo Mark" which are used for and in connection with dental implant services, dental and periodontal educational services, and related services and goods provided by Plaintiff. Plaintiff has established common law rights in all these marks, and additionally, Plaintiff holds the 762 Registration. Registration of a trademark on the principal register of the USPTO is prima facie evidence of validity and establishes a rebuttable presumption that the mark is protectable or distinctive. 15 U.S.C. § 1057(b); *Welding Servs., Inc. v. Forman,* 509 F.3d 1351, 1357 (11th Cir. 2007).

Defendants are directly infringing on the ADIA mark, the AMERICAN DENTAL IMPLANT ASSOCIATION mark, the Original Logo Components and the ADIA Logo, and are infringing on Plaintiff's other marks as Plaintiff's rights in those are senior to any rights claimed by Defendants because of the doctrine of "tacking"[12]; these infringements by Defendants occur by Defendants' advertising and promoting dental educational events and dental/periodontal services (the "Infringing Services") under and in connection with Defendants' Infringing Marks. Defendants' infringement of all of Plaintiff's marks included in the IDIA Family of Marks is clear, the impact created and caused by Defendants' infringement of the Red Shield Logo Mark and the Blue Shield Logo Mark are the most pronounced, because Defendants' use of its infringing mark engenders instant likelihood of confusion by Defendants' use of its infringing mark in a faded format on its website, and in very small images on its website and to users of Facebook and other social media services.

A court can consider the following seven factors in assessing whether or not a likelihood of consumer confusion exists: (1) type of Plaintiff's mark; (2) similarity of the parties' marks; (3) similarity of the products or services the marks identify; (4) similarity of the parties' retail outlets (trade channels) and customers; (5) similarity of advertising media used; (6) existence of actual confusion; and (7) Defendants' intent. *See Frehling,* 192 F.3d at 1335; *Lone Star Steakhouse & Saloon, Inc. v. Longhorn Steaks, Inc.,* 122 F.3d 1379, 1382 (11th Cir.1997) (remanded so that district court could fully consider all seven factors in determining the likelihood of confusion); *Michael Caruso & Co., Inc. v. Estefan Enters., Inc.,* 994 F. Supp. 1454, 1458 (S.D.Fla.1998). Of these, the type or strength of mark is considered among the most important. *See Frehling,* 192 F.3d at 1335.

All seven factors weigh in favor of a finding of consumer confusion. *See generally Frehling,* 192 F.3d at 1335. In looking at each factor, Plaintiff has demonstrated sufficient evidence to support an injunction:

1. Plaintiff has various strong and distinctive marks at issue in this matter and each will be discussed in turn herein:

---

[12] Under the doctrine of "tacking", a trademark owner may "clothe a new mark with the priority position of an older mark." *Hana Financial, Inc. v. Hana Bank,* 574 U.S. ___, 135 S. Ct. 907, 909 (2015). Tacking manifests where the new trademark "create[s] the same, continuing commercial impression" as the old mark, and the marks are "legal equivalents." *Spice Islands, Inc. v. Frank Tea & Spice Co.,* 505 F.2d 1293, 1296 (C.C.P.A. 1974).

a. The Red Seal Logo and the Blue Seal Logo: While a seal is commonly-used on certificates, Plaintiff's deliberate choice of a strong and distinctive mark that incorporates a blue ring with lightly-colored letters on it, which is itself rimmed in red, and which surrounds a white-backgrounded circle that features a gold dental implant screw (the "Original Logo Components") manifests as an arbitrary mark if not a fanciful mark.

b. The acronyms ADIA and IDIA are fanciful or arbitrary, and in either case merit the highest level of trademark protection *See Chanel, Inc. v. Suttner,* 109 U.S.P.Q. 493 (S.D.N.Y.1956) (if an abbreviation is fanciful or arbitrary, it may be entitled to full service mark protection.).  Moreover, even if the underlying words are descriptive or generic, abbreviation of even generic words is protectable if "some operation of the imagination is required to connect the initials with the product." *Anheuser- Busch, Inc. v. Stroh Brewery Co.,* 750 F.2d 631, 635-36 (8th Cir.1984); *Modern Optics, Inc. v. Univis Lens Co.,* 43 C.C.P.A. 970, 234 F.2d 504, 506 (C.C.P.A.1956) ("[I]nitials cannot be considered descriptive unless they have become so generally understood as representing descriptive words as to be accepted as substantially synonymous therewith.").

c. The marks AMERICAN DENTAL IMPLANT ASSOCIATION and INTERNATIONAL DENTAL IMPLANT ASSOCIATION should be deemed suggestive marks and entitled to protection.  Moreover, even if these marks are considered only descriptive, descriptive marks are similarly entitled to protection where secondary meaning regarding the source of goods or services has been established before commencement of the alleged infringement.  Here, Plaintiff's extensive use and promotion of the marks in connection with its services and within the industry, particularly among the community of dentists and periodontists prior to Defendants commenced use of the mark INTERNATIONAL ACADEMY OF DENTAL IMPLANTOLOGY renders the AIDA and IDIA marks protectable even if deemed to be suggestive marks.

d. Plaintiff's INTERNATIONAL DENTAL IMPLANT ASSOCIATION PURSUIT OF EXCELLENCE mark, as well as the '762 Registration, constitute arbitrary

marks which are entitled to extensive protection, or are at least suggestive marks, entitled to extensive protection without any need to establish secondary meaning.

2.  With regard to the second factor, the test of likelihood of confusion is not whether the marks' can be distinguished when subjected to a side-by-side comparison, but whether the marks' are sufficiently similar such that there is a likelihood of confusion as to the source of the goods or services, *In re National Data Corp.*, 753 F.2d 1056, 224 USPQ 749, 751 (Fed. Cir. 1985).  Further, when evaluating any similarities or dissimilarities between trademarks, emphasis must be on the recollection of the "average purchaser" who normally retains a "general", rather than specific, impression of trademarks. *Hornady Mfg. Co. v. Doubletap, Inc.*, 746 F.3d 995, 1001, 110 U.S.P.Q.2d 1140 (10th Cir. 2014) (the similarity of the marks is the "first and most important factor").  Two marks need not be identical to support a finding of infringement, and the key question remains whether the marks are sufficiently similar "to deceive the public." *Saxlehner v. Eisner & Mendelson Co.*, 179 U.S. 19, 33 (1900).

The logo marks are clearly visually similar, and manifest similar commercial impressions, as Plaintiff's logo marks include the Original Logo Components, and Defendant's infringing logo mark includes a blue border-ring rimmed in red, white background, and gold-colored implant screw.


Plaintiff's Blue Shield Logo


Plaintiff's Red Shield Logo



Defendant's Logo Mark

Both Plaintiff and Defendants use their respective marks as their icon image for members of the public who view each party's website, internationaldentalimplantassociation.com and CE4dentist.com, and when the public views the websites, the icon image is quite small, and none of the words are visible, such that the public only sees the blue circle and gold screw elements, as seen herein. The visual impression thus provided is even more similar than the marks manifest when visible in full size, and thus this .ico file usage by Defendants manifests an additional mode of trademark infringement.



Further, the 11th Circuit states that in determining similarity, the fact-finder should consider the overall impression created by the marks, and not simply compare isolated features. *Sovereign Military Hospitaller Order of Saint John of Jerusalem of Rhodes & of Malta v. Fla.*

9

*Priory of the Knights Hospitallers of the Sovereign Order of Saint John of Jerusalem, Knights of Malta, The Ecumenical Order*, 809 F.3d 1171, 1186 (11th Cir. 2015). Accordingly, the visual, auditory and commercial impression presented by Plaintiff's ADIA and IDIA marks is infringed upon by Defendants' IADI mark, as the pronunciation of Plaintiff's marks is similar to the pronunciation of Defendants' marks.

Finally, the visual, auditory and commercial impression presented by Plaintiff's AMERICAN DENTAL IMPLANT ASSOCIATION and INTERNATIONAL DENTAL IMPLANT ASSOCIATION marks is infringed upon by Defendants' INTERNATIONAL ACADEMY OF DENTAL IMPLANTOLOGY as Defendants' marks are similar to Plaintiff's in terms of cadence, the visual impression, and the similarities in the first letters of the words; even if Defendants can justify the use of the "dental implant..." formative, Defendants could and should have chosen a word that does not begin with the same "A" that is used in Plaintiff's "ASSOCIATION" formative, especially given the visual representation of the words in Defendants' logo mark.

Accordingly, these manifestations show that this factor tilts strongly in Plaintiff's favor.

3. The third factor, the similarity of the services identified by the marks, clearly tilts strongly in Plaintiff's favor, as the services are identical or highly similar in purpose, if not in quality.

4. The fourth factor, the similarity of the customers that the parties use the marks to market and promote their services to, clearly tilts strongly in Plaintiff's favor, as the customers for the services are identical or highly similar. Simply put, Defendant's "WHO WE ARE" page on its website at https://ce4dentist.com/who-we-are/ states that their services are targeted to:

> "...the general practitioner, the specialist, and all those looking to extend their knowledge and experience of implant dentistry."

Plaintiff's IDIA services constitute an alumni network for dentists who have taken Implant Seminars dental continuing education courses; Implant Seminars courses are a comprehensive, AGD-accredited program directed to give dentists the tools they need and the confidence they require to begin placing dental implants. Accordingly, Plaintiff and Defendant focus their promotion and marketing on the same pool of customers.

10

5.   The fifth factor also tilts clearly in Plaintiff's favor, as both parties market online and via email and snail mail mailings to dentists and periodontists, as well as through sponsorship of events and conferences directed to dental practitioners.

6.   The existence of actual confusion does not need to be proven at the preliminary injunction stage, and is not a prerequisite to the issuance of a preliminary injunction. *Custom Mfg. & Eng'g, Inc. v. Midways Servs., Inc.*, 508 F.3d 641, 647 (11th Cir. 2007). In fact, it "is black letter law that actual confusion need not be shown to prevail under the Lanham Act, since actual confusion is very difficult to prove and the Act requires only a likelihood of confusion as to source." *Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 799 F.2d 867, 874 (2d Cir.1986).

7.   Defendants are aware that Plaintiff has asserted that Defendants' marks infringe on Plaintiff's IDIA Family of Marks, and have made no steps to even try to mitigate the likelihood of confusion; accordingly, Defendants' intent, at least in 2017 and 2018, demonstrates their intent to trade on Plaintiff's fame and goodwill, which tilts strongly against Defendant in this Likelihood of Confusion analysis. Further, Defendants could easily have chosen to use the term SCHOOL, SEMINAR or LECTURES instead of "ACADEMY", and thus by using one different word, they would have mitigated the issue of infringement of Plaintiff's word marks and acronyms. Defendants also could have easily chosen to use literally any other colors for the border rings in its mark, and any symbol other than a screw, particularly a gold-colored one, and mitigated the issue of infringement of Plaintiff's logos. Defendants' refusal to do any of these small actions in creating, adopting and using its mark in connection with services that are identical in purpose to Plaintiff's services shows and evidences Defendants' intent to infringe on and trade on Plaintiff's goodwill, marks, branding and reputation.

**B)  Plaintiff has suffered irreparable harm**

In an action for trademark infringement that involves distinctive marks, such as the IDIA Family of Marks, a showing that "a significant number of consumers are likely to be confused" satisfies both irreparable harm and a likelihood of success. *Virgin Enters. Ltd. v. Nawab*, 335 F.3d 141, 146 (2d Cir. 2003) (reversing denial of preliminary injunction). The Eleventh Circuit has acknowledged that "once a plaintiff establishes a likelihood of success on the merits of a trademark infringement claim," there is a "presumption of irreparable harm." *N. Am. Med. Corp. v. Axiom Worldwide, Inc.*, 522 F.3d 1211, 1227 (11th Cir. 2008), quoted in *Nane Jan, LLC v.*

*Seasalt and Pepper, LLC*, No. 2:2014cv00208 - Document 67 (M.D. Fla. 2014).[13] Courts have consistently granted injunctive relief when distinctive trademarks or service marks have been studiously copied. *See Yurman Design Inc. v. Diamonds & Time*, 169 F. Supp. 2d 181, 184-86 (S.D.N.Y. 2001) (preliminary injunction against use of plaintiff's trademark in jewelry advertisement); *Fun-Damental Too, Ltd. v. Gemmy Indus. Corp.*, 111 F.3d 993, 997-98 (2d Cir. 1997) (preliminary injunction against toy that violated plaintiff's trade dress).

Plaintiff is suffering irreparable injury to its protected trademarks and to its goodwill resulting from Defendants' promotion of its services in connection with its infringing marks, and a substantial threat remains of said injury continuing unabated. *Processed Plastic Co. v. Warner Communications*, 675 F.2d 852, 858 (7th Cir. 1982) ("It is generally recognized in trademark infringement cases that (1) there is not adequate remedy at law to redress infringement and (2) infringement by its nature causes irreparable harm.") Defendants would not suffer any untoward harm from being enjoined from using its infringing marks in promotion of or performance of its services, as Defendants have no right to infringe on Plaintiff.

Here, Defendants intentionally adopted marks that are confusingly similar to Plaintiff's IDIA Family of Marks, and have deliberately chosen not to modify any of their marks after being notified about the issue of likelihood of confusion and infringement. Further, while Plaintiffs note that irreparable harm is not automatically presumed in all trademark infringement cases, it is clear that irreparable harm exists in a trademark case where the moving party shows that it will lose control over the reputation of its trademark, as well as its goodwill pending trial. There can be no doubt that Plaintiff will succeed on its trademark infringement claims. A determination that there is a strong showing of likelihood of confusion, or that a trademark owner will suffer harm to its reputation or its goodwill in the mark, is sufficient to establish irreparable harm. Where there exists a high likelihood of consumer confusion and "'a sufficiently strong showing of likelihood of confusion [caused by trademark infringement] may by itself constitute a showing of . . . a substantial threat of irreparable harm.'" *It's a 10, Inc. v. Beauty Elite Group, Inc.*, 932 F. Supp. 2d 1325, 1332 (S.D. Fla. 2013). *See, e.g., Marks Organization, Inc. v. Joles*, 784 F. Supp.

---

[13] Pursuant to the Court's ruling in *Axiom*, a Florida court may grant a preliminary injunction "without the benefit of a presumption of irreparable injury," or may "decide that the particular circumstances of the instant case bear substantial parallels to previous cases such that a presumption of irreparable injury is an appropriate exercise of its discretion in light of the historical traditions." *N.A. Med. Corp v. Axiom*, 522 F.3d 1211 (11th Cir. 2008).

2d 322, 335 (S.D.N.Y. 2011) (holding that extreme likelihood of confusion resulting in lost goodwill demonstrated irreparable injury). Loss of control over the moving party's reputation is neither "calculable nor precisely compensable" and thus cannot be calculated monetarily.  *Texas City Triathlon, LLC v. NYC Triathlon Club, Inc.*, 704 F. Supp. 2d 305, 343 (S.D.N.Y. 2010). "[A]n 'injury is 'irreparable' only if it cannot be undone through monetary remedies.'" *Cottonwood Financial*, 778 F. Supp. 2d at 759 (quoting *Enter. Int'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana,* 762 F.2d 464, 472-73 (5th Cir.1985)).

## II.     Plaintiff's Remedies at Law Are Inadequate to Compensate the Harm and Damage Suffered.

If Defendants are permitted to continue to infringe on the IDIA Family of  Marks, and perform services using marks that are likely to be assumed to be connected with Plaintiffs' marks, "trying to 'compensate' after the fact for damage to business goodwill and reputation" will never be able to constitute a just or full compensation." See 5 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 30:47 (4th ed. 2008). Plaintiff's carefully crafted reputation will be irreparably damaged as consumers may experience Defendants' Infringing Shows believing that they are connected to, authorized by, or affiliated with Plaintiff, Plaintiff's services and its IDIA Family of Marks, and such a loss cannot be readily calculated or undone through monetary means.

Unless Defendants are enjoined from engaging in the infringement of Plaintiff's trademark, Plaintiff will continue to suffer irreparable injury. Specifically, in trademark cases, "a sufficiently strong showing of likelihood of confusion [caused by trademark infringement] may by itself constitute a showing of ... a substantial threat of irreparable harm." *E. Remy Martin & Co., S.A. v. Shaw–Ross Int'l Imports, Inc.,* 756 F.2d 1525, 1530 (11th Cir. 1985) (alterations added; footnote call number omitted).  Defendants use and marketing of the Infringing Logo is confusingly similar to, and include and incorporate Plaintiff's Original Logo Components. Defendants have placed its Infringing Mark on items that are provided to attendees of Defendant's courses in a manner that will lead any dental practitioner, dental staffer or member of the general public who sees such item to believe that said item is created, licensed, distributed or authorized by, or in a way, associated with Plaintiff. Defendant's "Infringing Marks" include but are not limited to the IADI Logo and each component therein including the screw (in gold-

and-black or black-and-white), and the blue circle with the red rim with the mark placed in serif font therein.

At the same time, Defendant is also providing and advertising services which closely resemble the services provided by Plaintiff under Plaintiff's IDIA Family of Marks (though they are expected to be of lesser quality) that they create a commercial impression that Plaintiff authorized, licensed, sponsored, or approved of Defendants' marketing advertising, offering for sale, selling and performance of the Infringing Services in connection with the Infringing Marks.

If Defendants' conduct is allowed to manifest, resume and/or continue, Plaintiff and its goodwill and reputation will continue to suffer immediate, substantial and irreparable injury. See *Levi Strauss & Co. v. Sunrise Int'l Trading Inc.,* 51 F.3d 982, 986 (11th Cir. 1995) ("There is no doubt that the continued sale of thousands of pairs of counterfeit jeans would damage [the plaintiff's] business reputation and decrease its legitimate sales.") (alteration added).

Moreover, Plaintiff has no adequate remedy at law so long as Defendants continue the unauthorized use of the IDIA Family of Marks because Plaintiff cannot "control the quality of what appears to be its products in the marketplace." *Under Armour,* 2014 WL 1652044, at *6. This also places the valuable reputation and goodwill of Plaintiff in the hands of Defendants, over whom Plaintiff has no control. See *Adidas AG v. 2013jeremyscottadidas.com,* 2014 WL 799132, at *8 (S.D.Fla. Feb. 28, 2014) ("An award of monetary damages alone will not cure the injury to Plaintiffs' reputation and goodwill that will result if Defendants' infringing and counterfeiting actions are allowed to continue."); *Edge Sys., LLC v. Aguila,* 186 F. Supp. 3d 1330, 1362 (S.D. Fla. 2016) ("damages are inadequate if a defendant's continued use of infringing marks constrains the plaintiff's ability to control its reputation.")

Defendants, on information and believe, have not corrected members of the general public or the dental or healthcare industries when they have expressed confusion between services performed under the IDIA Family of Marks or as to the marks included in the Plaintiff's IDIA Family of Marks.   Therefore, Defendants have taken purposeful steps to mislead practitioners, as well as the general public and those who provide services within the dental and healthcare industries, as well as continuing education-adjacent service providers and students, with regard to nature of Defendants' services and the source of the origin of said services, as well as goods distributed by Defendants that bear Defendants' infringing IADI logo.

14

Defendants' actions demonstrate that an award of money damages alone will not cure the injury to Plaintiff's reputation and goodwill that will result if Defendants' infringing and counterfeiting actions are allowed to continue. *(Edge Systems LLC v. Aguila, 186 F. Supp. 3d 1330, 1359 (S.D. Fla. 2016)* ("Aguila's insidious acts of infringement of Edge's marks have exacerbated consumer confusion in the relevant marketplace. This type of harm is certainly hard to quantify and thus is irreparable.")).

### III. The Balance of Hardships Weighs Heavily in Plaintiff's Favor.

Defendants are not prejudiced by being barred from violating trademark laws and other federal and state unfair competition laws or engaging in misleading the public. See e.g., *Tiramisu Int'l LLC v. Clever Imports LLC, 741 F.Supp.2d 1279, 1288 (S.D.Fla.2010)* (reasoning that enjoining a defendant from using a protected mark "cannot cause a hardship for [Defendant] that could outweigh the harm suffered by [Plaintiff] through the illegal use of its mark").

Here, Plaintiff runs the risk of a continuous loss of sales, goodwill, and damage to its reputation in the marketplace if Defendant is allowed to continue his use of the marks at issue. Whereas Defendants face no cognizable hardship, if enjoined, as they have no legal or equitable right to use the marks. See *Edge Systems LLC v. Aguila, United States District Court, S.D. Florida, 186 F.Supp.3d 1330 (May 9, 2016).* In fact, Defendants "should not be heard to complain about hardship when their actions, undertaken with apparent prior knowledge of Plaintiff's trademarks . . . , imply bad faith."). *Laboratorios Roldan c. por A. v. Tex Int 'l, Inc.,* 902 F. Supp. 1555, 1571 (S.D. Fla., 1995); *Nailtiques Cosmetic Corp. v. Salon Scis., Corp.,* 1997 W L 244746, at *5 (S.D. Fla., 1997).

### IV. An Injunction Would Further the Public Interest.

Public policy favors entry of an injunction that will reduce the likelihood of confusion experienced by the patrons as well as within the healthcare and dental industries. The public interest supports the issuance of a permanent injunction in order to prevent consumers from being misled by Defendants' products and services in the marketplace. *Angel Flight of Georgia, Inc. v. Angel Flight Am., Inc.,* 522 F.3d 1200, 1209 (11th Cir.2008) ("[T]he 'public interest' relevant to the issuance of a permanent injunction is the public's interest in avoiding unnecessary confusion. ... The reason is simple: the public deserves not to be led astray by the use of

inevitably confusing marks."). "The public has an interest in not being deceived – in being assured that the mark it associates with a product is not attached to [services] of unknown origin and quality." *Texas City Triathlon, LLC*, 704 F.Supp.2d at 344; *see also Blue Bell Bio-Medical v. Cin-Bad, Inc.*, 864 F.2d 1253, 1256 (5th Cir. 1989), *A.J. Canfield Co. v. Vess Beverages, Inc.*, 796 F.2d 903, 909 (7th Cir. 1988). By putting an immediate end to Defendants' deceptive practices that have misled, confused, and victimized consumers, injunctive relief will serve the public interest. *Teledyne Indus., Inc. v. Windmere Prods., Inc.*, 433 F. Supp. 710, 740 (S.D. Fla. 1977) "Customer confusion is by its very nature against the public interest."). Furthermore, while the public interest favors protecting the consumer, it "also protects the businessman who has striven to develop his goodwilll." *Polo Fashions, Inc. v. Rabanne*, 661 F. Supp. 89, 96 (S.D. Fla. 1986).

In particular, as this case intersects with public health issues and the safety of the general public, trademark law has a primary and significant interest in protecting the public from deception, confusion, and misassociation. *Lincoln Restaurant Corp. v. Wolfies Restaurant, Inc.*, 291 F.2d 302, 303 (2d Cir.1961). As the court said in the *Stork Restaurant* case, the law protects the "'ignorant, the inexperienced, and the gullible'" as well as the worldly wise, the intelligent and the astute. *Stork Restaurant, Inc. v. Sahati*, 166 F.2d 348, 359 (9th Cir. 1948). "In a trademark infringement or unfair competition case, a third party, the consuming public, is present and its interests are paramount." *Ryder Sys. v. Storage & Moving Servs.*, 2013 U.S. Dist. LEXIS 104490, *21 (S.D. Fla. July 25, 2013) (quoting *BellSouth Adver. & Publ'g Corp. v. Real Color Pages, Inc.*, 792 F. Supp. 775, 778 (M.D. Fla. 1991)).

Granting the injunctive relief will serve the public interest because it is the only way to bar Defendants' use of Plaintiff's intellectual property and infringement of Plaintiff's rights, as well as Defendants' acts causing confusion in the medical/dental services and continuing-education sectors. Dentists and related businesses who recognize and know Plaintiff's IDIA Family of Marks and who rely on their recognition and knowledge of same to make decisions about their dental services and education are at risk of being deceived into purchasing and/or obtaining services provided by Defendants. Dentists acting under the mistaken belief that Defendants are operating or about to operate a genuine IMPLANT SEMINARS educational program under license will be misled into attending those programs thinking that they are authorized by Plaintiff. And dentists and related businesses that refer patients to practitioners

who have been educated by Plaintiff or at Plaintiff's programs may mistakenly send those same patients to Defendants' students believing that the Defendants' seminars are performed by, authorized by, licensed by and/or operated by or pursuant to a license from Plaintiff.

Plaintiff was the first to use the IDIA Family of Marks in South Florida, the State of Florida and across the United States. *Tally-Ho, Inc. v. Coast Community College Dist.*, 889 F.2d 1018, 1022-23 (11th Cir. 1989) ("Under the [Florida] common law, trademark rights are appropriated only through actual prior use in commerce. . .The first to use a mark on a product or service in a particular geographic market, the senior user, acquires rights in the mark in that market [and the] senior user may enjoin such uses that infringe upon its prior rights."

Granting the injunctive relief requested will serve the public interest by preventing consumer confusion and risking serious damage to Plaintiff's reputation, brands, and rights. *Chanel, Inc. v. chanel255.org, No. 12–21762–CIV, 2012 WL 1941598, at \*6 (S.D.Fla. May 29, 2012).* ("the public has an interest in not being misled as to the origin, source, or sponsorship of trademarked products.")

## CONCLUSION

Unless Defendants are restrained and enjoined from engaging in the infringing actions, plaintiff will suffer irreparable damage. Defendants have demonstrated a deliberate intent to trade off the goodwill of Plaintiff's '762 Registration and other logos (established by common law rights) as a means of increasing Defendants' own sales and prominence at the expense of Plaintiff. Thus, Plaintiff respectfully requests this Court enter an injunction declaring that Defendants, individually and collectively, as well as their agents, servants, employees, licensees, sponsors, associates, and attorneys, and all persons acting by, though, or in active concert with any of them, be preliminarily and permanently enjoined:

i.  (i) From using in any manner and on any platform or in any media any name or mark confusingly similar to any of Plaintiff's IDIA Family of Marks, logos, designs to slogans, including the ones currently in used by Defendants;

ii.  (ii) From committing any other act which falsely represents or which has the effect of falsely representing that the goods or services of the Defendant are licensed, authorized by, or in any way associated with Plaintiff;

iii.  (iii) From otherwise infringing the IDIA Family of Marks;

17

iv.     (iv) From otherwise unfairly competing with Plaintiff;

v.      (v) From otherwise diluting or tarnishing the IDIA Family of Marks and Plaintiff's business reputation;

vi.     (vi) From interfering with Plaintiff's contractual relations with any third party; and

vii.    (vii) From registering or holding any registration for any mark containing any formative found in Plaintiff's IDIA Family of Marks within the State of Florida or in any other state, country or trademark registration office.

Respectfully submitted,

> PATHMAN LEWIS, LLP
> Counsel for Plaintiff
> One Biscayne Tower, Suite, 2400
> Two S. Biscayne Boulevard
> Miami, Florida 33131
> Telephone: (305) 379-2425
> Facsimile: (305) 379-2420

> By: ___/s/ Aaron W. Tandy_____
> JOHN A. MOORE
> Fla. Bar No. 91820
> AARON TANDY
> Fla. Bar No. 190144

OF COUNSEL:

Heidi Howard Tandy
1691 Michigan Ave.
Suite 250
Miami Beach, FL 33139

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that I electronically filed on August 15, 2018, the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all persons registered for this case, including all opposing counsel. Service to all other persons was made by the method indicated in the service list below.

By: ___Aaron W. Tandy_____
Aaron Tandy